John S. PETTENGILL, Libelant,

v.

S.S. JAKARA, her engines, tackle and gear, and any and all persons claiming any interest therein, and A/S Kosmos, and Anders Jahre & Co., A/S, the owners and operators thereof, Respondents.

A/S KOSMOS, Claimant,

v.

BRADY-HAMILTON STEVEDORE COMPANY, Third-Party Respondent.

Civ. No. 426-59.

United States District Court
D. Oregon.

Sept. 29, 1961.

Evans & Kennedy, Jack L. Kennedy, Portland, Or., for libelant.

Wood, Wood, Wood, Tatum, Mosser & Brooke, Gray & Lister, Floyd A. Fredrickson and H. Lawrence Lister, Portland, Or., for respondent and claimant.

SOLOMON, Chief Judge.

Libelant, a longshoreman employed by the Brady-Hamilton Stevedoring Company, libeled the SS JAKARA for injuries which he sustained due to the unseaworthiness of the vessel and the negligence of its owners and officers.

The SS JAKARA is a Norwegian vessel, constructed in 1955. It was designed to carry automobiles, and since its construction has been carrying Volkswagens, Karman Ghias and Goliaths, from Bremen, Germany, to the United States.

Each hold of the vessel contained several temporary or false decks, which were six to eight feet apart. Rows of automobiles were lashed to each deck by means of lag screws (also called eye screws or eye bolts), and such screws were bolted to the deck at regular intervals according to a specific pattern.

On the lower hold of hatch No. 3, these lag screws protruded from two to three inches above the deck and were of a metallic color, as distinguished from the wood color of the materials used in the hold. These screws, which were permanently attached to the decks, were installed at the time the ship was constructed.

On the morning of July 22, 1958, the SS JAKARA, while in Portland, was unloading Volkswagens. All of the automobiles on the temporary decks in the No. 3 hatch had been removed. Libelant and other longshoremen were in the process of removing the thwartship beams under the lowest temporary deck. Libelant was engaged in putting slings around the beams so that they could be removed. While one such beam was being removed, libelant claims that he slid or stepped down from a Volkswagen upon which he had been lying and stand-

ing. Libelant landed between two of the automobiles in an aisle and stepped on a lag screw, turned his ankle, and fell to the deck. He claims severe injuries as a result of the fall.

Libelant contends that the vessel was unseaworthy and that the owners were negligent in permitting the lag screw to protrude from the deck; and, secondly, in failing to provide sufficient light to enable the libelant to see and observe such screw.

I find that the lag screws which were bolted in the lower deck of the No. 3 hatch do not render the vessel unseaworthy, nor make the owners guilty of negligence. The SS JAKARA, like numerous vessels which carry automobiles, commonly use such screws in order to lash automobiles to the decks and hold them in place. While the screws do protrude two or three inches above the deck, such projecting fixtures, particularly when they are part of a regular pattern and are readily observable, are not unusual. In fact, longshoremen and seamen working in the holds do not expect smooth even surfaces free from obstructions and projections from either cargo or fixtures.

I further find that libelant has failed to prove by a preponderance of the evidence that the lighting was inadequate. Libelant testified that it was quite dark, and he was partially corroborated by his partner in the hold and by the hatch tender, but even they admitted that the hatch covers as well as the temporary decks had been removed, and the lighting in the square of the hatch was satisfactory. The hatch tender testified that when he was on the main deck, he saw the lag screw upon which libelant claims to have fallen, as well as a hemp rope. This was a distance of at least 40 feet, and this portion of his testimony was corroborated by the Master of the vessel, who made a similar observation.

Although there were clouds in the sky on this July morning, I find that the natural light was adequate and that there was no need for artificial lights in the wing where the libelant was working and injured.

The libel is therefore dismissed. Proctors for the claimant may prepare findings of fact, conclusions of law and a decree in accordance with this memorandum opinion.